Appeal No. 2015-5010

# United States Court of Appeals

*for the*

# Federal Circuit

AMY CRUTCHFIELD,

*Petitioner-Appellant,*

– v. –

SECRETARY OF HEALTH AND HUMAN SERVICES,

*Respondent-Appellee.*

ON APPEAL FROM THE UNITED STATES COURT OF FEDERAL CLAIMS
IN CASE NO. 1:09-VV-00039-SGB, JUDGE SUSAN G. BRADEN

### REPLY BRIEF FOR PETITIONER-APPELLANT

JOHN F. MCHUGH, ESQUIRE
LAW OFFICE OF JOHN MCHUGH
233 Broadway, Suite 2320
New York, New York 10279
(212) 483-0875

*Attorney for Petitioner-Appellant*

March 11, 2015

# CONTENTS

| | |
|---|---|
| TABLE OF AUTHORITIES | b |
| SUMMARY OF ARGUMENT | 1 |
| FACTS ESTABLISHING THAT THE DECISION BELOW WAS ARBITRARY AND CAPRICIOUS | 2 |
| FULMINANT TYPE 1 DISEASE EXISTS. | 2 |
| PETITIONER'S DISEASE CAN NOT BE LATENT AUTOIMMUNE DIABETES IN ADULTS | 4 |
| DIABETES IS AN AUTOIMMUME DISEASE AND MOLECULAR MIMICRY ACCELERATED BY AN ANAMNESTIC REACTION IS A WELL RECOGNIZED AND THUS, PLAUSIBLE THEORY OF CAUSATION | 5 |
| THE DECISION IS CONTRADICTED BY RESPONDENT'S EXPERT'S OPINIONS FOUND IN HIS PEER REVIEWED PUBLICATIONS, AS WELL AS BY PETITIONER'S EVIDENCE | 8 |
| ARGUMENT | 9 |
| HOLDING THAT ALL DIABETES TAKES OVER A YEAR TO BECOME CLINICAL IS CONTRARY TO IRREFUTABLE SCIENTIFIC EVIDENCE IN THE RECORD | 9 |
| REQUIRING PETITIONER TO SHOW PRECISELY HOW MOLECULAR MIMICRY CAUSED HER DIABETES IMPROPERLY INCREASES THE PETITIONER'S BURDEN OF PROOF FROM MORE LIKELY THAN NOT TO NEAR ABSOLUTE CERTAINTY | 11 |
| THE IOM CONCLUSION IS IRRELEVANT | 14 |
| CONCLUSION | 15 |

# CASES

*Althen v. Secretary of HHS*, 418 F.3d 1274 (Fed.Cir.2005) — 13

*Blackburn v. Secretary of Health and Human Services*, Not Reported in Fed.Cl., 2015 WL 425935, (Fed.Cl., 2015), — 12

*Harris v. Secretary of Health and Human Services,* 2014 WL 3159377 (Fed Cl. 2014) — 14

*Haselwander v. McHugh,* 774 F. 3d 990, 994 (D.C. Cir. 2014). — 11

*Islander E. Pipeline Co. v. State of Connecticut*, 467 F.3d 295 (2d Cir. 2006) — 11

*Knudsen v. Secretary of Dept. of Health and Human Services*, 35 F.3d 543 (Fed. Cir 1994) — 13

*League of Wilderness Defenders/Blue Mts. Biodiversity Project v. Connaughton*, 752 F.3d 755 (9th Cir. 2014). — 10

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, (1983)    10 — 10

*Tompkins v. United States*, 117 Fed. Cl. 713 (2014) — 12

*Tompkins v. Sec'y of Health & Human Servs.*, 2013 WL 3498652, (Fed. Cl. Spec. Mstr. June 21, 2013) — 12

*Tucson Herpetological Soc'y v. Salazar*, 566 F.3d 870 (9th Cir. 2009) — 10

# OTHER

<u>House Report 99–908 at 3, 1986</u> U.S.Code Cong. & Admin. News at 6344 — 13

# SUMMARY OF ARGUMENT

Petitioner's opening brief argued that it was arbitrary and capricious for a Special Master to render a decision which is contrary to the overwhelming weight of the evidence in the record. It was also arbitrary and capricious to credit the testimony of the respondent's experts which was directly contradicted by the medical literature in evidence, and in particular, contradicted by literature which respondent's experts authored. Thus, it was also arbitrary and capricious to render a decision completely contrary to the well-understood medical facts of record.

Respondent argued that because the Special Master explained his opinion at length and has a basis to criticize the clarity of the testimony of the petitioner' expert, his ruling was not arbitrary and capricious.

However, respondent is wrong. Contrary to the respondent's assertion, none of the medical studies submitted support respondent's case. Here, all the evidence in the entire record other than respondent's testimony, establishes a theory of causation recognized by even the respondent's expert to be a well-understood cause of diabetes, a conclusion found in respondent's expert's out-of-court writing. Here, medical literature establish the symptoms of Type 1 fulminant diabetes, a well-recognized sub-type of diabetes which arises in weeks, not years, after exposure to an environmental trigger, match those of petitioner's case precisely. Respondent's

alternate theory of causation, LADA, is impossible based upon respondent's expert's testimony and all the peer reviewed submissions.

Contrary to the respondent's position, the arbitrary and capricious standard of review does not allow a fact finder to review the evidence, no matter how carefully, but reach conclusions contrary to what that evidence plainly shows. Conclusions inconsistent with the evidence cannot stand even in the face of the deferential standard of review.

## FACTS ESTABLISHING THAT THE DECISION BELOW WAS ARBITRARY AND CAPRICIOUS

FULMINANT TYPE 1 DISEASE EXISTS.

The parties agree that the key conclusion of the Special Master was that diabetes cannot become symptomatic in less than a year.

That conclusion is scientifically incorrect, a fact established by the literature submitted confirming the existence of fulminant type 1 diabetes, a subtype which can become clinical *in weeks* and which is associated with exposure to mumps. A peer reviewed report of a Japanese nationwide study found that "Fulminant type 1 diabetes is a distinct subtype and accounts for 20% of the ketosis-onset type 1 diabetes cases in Japan. …" A568, 582. That report, A582 states in relevant part:

> The clinical characteristics of this subtype of type 1 diabetes are 1) remarkably abrupt onset of disease, 2) very short (<1 week) duration of diabetic symptoms, such as polyuria, thirst, and body weight loss, . . .

Other researchers and practitioners have also observed and reported this disease as

well as its association with mumps, both the disease and the vaccine.

> Fulminant type I diabetes is *characterized by rapid onset of diabetic ketoacidosis within a short period, normal to near-normal l-Ib A 1 c level at onset and complete beta cell destruction* [2]. A nationwide survey of fulminant type I diabetes in Japan revealed that fulminant type 1 diabetes accounts for approximately 20% or cases of type I diabetes [3]. Although involvement of viral infections as a trigger has been suggested because of the markedly acute onset, the pathogenesis of this type of diabetes remains unknown [2-3]. In this report, we describe a case of fulminant type I diabetes associated with significant elevation of mumps titers. A568

and

> Several studies have suggested that there may be a relationship between Coxsackie virus infections and diabetes.3  Among the Coxsackie group, the B4 strain is usually associated with diabetes, but of all the viral infections, mumps seems to be most frequently associated with this disease. In most of these instances, *symptoms of diabetes developed within one to eight weeks after an infection*

A573

> A 6-year-old boy was admitted in May 1973 with a history of polydypsia, polyuria, and bed-wetting of 5 day's duration. <u>One month before o</u>nset of symptoms the patient had received mumps vaccine (Mumpsvax). Physical examination on admission was unremarkable. Urine examination showed glycosuria (1 g/dl) and 1 + reaction for ketones. Blood sugar was 345 mg/dl. Serum and urine amylase were  normal. He was soon stabilized on 5 units of lente insulin.

A576,

> Symptoms of diabetes mellitus began *2 months after mumps in a 9-year-old boy and his 6-year-old siste*r. A causal relation between the mumps and the diabetes is suggested.

A579

Therefore, onset of diabetes within four to six weeks of an environmental trigger,

particularly mumps, is a recognized onset time frame.  These are facts found in

3

peer reviewed medical literature establishing that the Petitioner's disease precisely fits what has been reported about fulminant Type 1 diabetes.

## PETITIONER'S DISEASE CAN NOT BE LATENT AUTOIMMUNE DIABETES IN ADULTS

The second fact ignored by the Court is that LADA is clearly different from standard Type 1 diabetes as it does not respond to insulin. This fact is established by all the literature submitted about that condition and most significantly by the out-of-court peer reviewed writings of respondent's expert as well as by his testimony. In his writings Dr. Maclaren states that this condition cannot be treated initially with insulin due to transient insulin resistance. A699 (top of left column), A723 (bottom), A686 (right middle). This is also confirmed by respondent's other supporting submissions. A656, A723. Dr. Maclaren's testimony agrees. A177 L. 4-10. Dr. Maclaren admits that appellant's diabetes was immediately controlled with insulin. A180. Thus, Ms. Crutchfield's disease cannot be LADA. This fact is established by the record. A617.

Respondent's sole theory of alternate causation, that petitioner's disease started in childhood, is completely refuted by all the evidence in the record. There is no other evidence in this record other than Dr. Maclaren's testimony and submissions and Dr. Bercu's "me too" testimony. Thus, the court's conclusion that

4

the disease always takes longer than the time between vaccination and onset is completely unsupported.

It is the respondent's obligation to establish and alternate cause non idiopathic cause which is not vaccine related. On this record the holding that this disease had to have originated before the vaccination is to hold that her disease is idiopathic.

## DIABETES IS AN AUTOIMMUME DISEASE AND MOLECULAR MIMICRY ACCELERATED BY AN ANAMNESTIC REACTION IS A WELL RECOGNIZED AND THUS, PLAUSIBLE THEORY OF CAUSATION

Diabetes is an autoimmune disease which requires an environmental trigger to cause an autoimmune attack on the pancreas. This can happen only in a susceptible person. See A418, 434. Respondent's submission A623 agrees.

This case arises within the Vaccine Injury Compensation Program. Vaccines work due to an anamnestic response, defined in a widely-accepted medical dictionary as:

> **anamnestic reaction** *n.*
> Augmented production of an antibody due to previous stimulation by the same antigen.
> The American Heritage® Stedman's Medical Dictionary
> Copyright © 2002, 2001, 1995 by Houghton Mifflin Company. Published by Houghton Mifflin Company.

Some basic medical principles deserve this Court's attention. By giving a vaccine, the body's immune system's memory cells are exposed to the antigens of a

5

disease so that when the vaccinee is exposed to the wild disease, the immune system remembers and responds quickly to attack and kill the invading antigen before it can cause clinical disease. A147 L 2-A148 L.2. A vaccine causes the anamnestic response, which shortens the time the immune system takes to detect a disease and to activate. It is well understood that an autoimmune disease, such as diabetes, results from a misdirected response of the immune system to an antigen encountered from the environment.

 It is illogical for a Special Master who has been dealing with vaccine injury cases for years to hold that because an expert did not clearly explain an anamnestic reaction, the Special Master does not understand how an anamnestic response could work to shorten the time from a second exposure to an environmental trigger such as a vaccine, to clinical symptoms.

 Further, the Court below found that molecular mimicry was only a theory and thus, was insufficient without a full explanation as what in Ms. Crutchfield's islet cells was sufficiently similar to what in the MMR vaccine to confuse her immune system. The theory alone, without proof of its method of injury specific to Ms. Crutchfield, was insufficient to explain how the vaccine could cause Ms. Crutchfield's diabetes A42. Most of medical knowledge is theoretical as medical science cannot see precisely what in the cells of the living human body are affected by most diseases. Medical science relies on animal models in laboratory

experiments and cause and effect and reach theories based on observation. A421 L. 15-19, Similar statements as to the limits of medical knowledge, are found in Dr. Maclaren's out-of-court publications. A692-93. Molecular mimicry is a well-accepted and thus, plausible theory of causation of autoimmune reactions.

Medical literature submitted by the respondent agrees with the petitioner as to the plausibility of the theories including molecular mimicry and bystander activation described by Dr. Shoenfeld. Indeed the Court credits respondent's experts in stating that they find no connection between molecular mimicry and diabetes and that it is mere speculation. A15. However, in his out of court writing, Dr. Maclaren's states that molecular mimicry as the most likely cause of diabetes, describing medical sciences best guess as to how it works. "The interaction between a cell bearing and HLA molecule associated with an antigenic peptide and a T lymphocyte bearing a receptor capable of recognizing the HLA-peptide complex triggers the activation and proliferation of T lymphocytes. This process underlies nearly all immune responses." A740[1]. He also stated in another article, "(a)lthough the possible factors that dictate induction of islet cell autoimmunity in a genetically susceptible person are unknown, and viruses remain the leading

---

[1] In the opening brief this quote was miss cited to this quote to Respondent's first Exhibit K. It is found in the second Exhibit K A740.

7

candidates through mechanisms of molecular mimicry or through bystander activation." A700.

Not only does this published material from Dr. Maclaren supply the explanation of molecular mimicry the Court below found lacking, A42, it deems diabetes a result of molecular mimicry. Again, the Special Master made findings of medical fact which are contrary to the overwhelming consensus of the medical and scientific community as established by the evidence in this record based upon testimony by Dr. Maclaren contradicted by his published work. The court below deemed all this moot by increasing the petitioner's burden of proof as to how molecular mimicry worked beyond the limits of medical knowledge and by requiring testimony that LADA always was insulin resistant, a fact fully established by respondents literature. Surpa. A42

## THE DECISION IS CONTRADICTED BY RESPONDENT'S EXPERT'S OPINIONS FOUND IN HIS PEER REVIEWED PUBLICATIONS, AS WELL AS BY PETITIONER'S EVIDENCE

Additionally, as to LADA and Molecular Mimicry, the respondent's experts have testified in this case as to factual conclusions which are contradicted by the medical literature the respondent has submitted. In Maclaren's, case, he has testified to conclusions completely contradicted by his own out-of-court peer

8

reviewed writings[2]. By deeming his testimony more convincing, the Court has credited the in-court testimony over his out-of-court peer reviewed material. Crediting such unreliable testimony is arbitrary and capricious where, as here, no explanation of why the in-court opinion prevails over the out-of-court, published opinion has been offered. In addition the out-of-court opinion was peer reviewed, meaning other experts concurred, rendering that material far more credible than paid for testimony in litigation.

## ARGUMENT

### HOLDING THAT ALL DIABETES TAKES OVER A YEAR TO BECOME CLINICAL AFTER AN ENVIRONMENTAL TRIGGER IS CONTRARY TO IRREFUTABLE SCIENTIFIC EVIDENCE IN THE RECORD

Respondent's major defense to this claim is the assertion by Dr. Maclaren that the petitioner has LADA and therefore the destruction of her islet cells had started long before the vaccine was administered. He proffers that the fact that the disease manifested itself shortly after the vaccination was mere coincidence. He focused on LADA, nothing else. Dr. Bercu denied expertise in diabetes asserting that his role was limited to finding literature to support an opinion, A217L3-12.

As was pointed out below and in the Opening Brief here, and above all of

---

[2] He testified that mumps was no longer associated with diabetes, but see his peer reviewed statement to the contrary, A702 left center.

9

the evidence on LADA, including Dr. Maclaren's own writings, establish that LADA does not respond initially to insulin. Ms. Crutchfield's diabetes was immediately controlled with insulin. Thus, based upon all the evidence in this record as to LADA, Ms. Crutchfield's disease cannot be LADA.

The only other evidence submitted were epidemiological studies which failed to find an association between vaccines and autoimmune reactions. A11. Therefore, there is no evidence in this record supporting the conclusion that diabetes always takes longer to become clinical than the time between vaccination and diagnosis here. Epidemiological studies cannot exclude vaccine causation as they cannot detect such rare events. A137L:15-20.

A decision based upon a medical opinion which is demonstrably incorrect, such as that of Dr. Maclaren attributing Ms. Crutchfield's condition to LADA, is arbitrary and capricious. "[C]ontrary scientific explanations can serve as evidence of arbitrary and capricious agency decision-making, *see Tucson Herpetological Soc'y v. Salazar*, 566 F.3d 870, 879 (9th Cir. 2009)." *League of Wilderness Defenders/Blue Mts. Biodiversity Project v. Connaughton,* 752 F.3d 755, 764 (9th Cir. 2014). *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983) (noting that an agency's failure to offer an explanation for its decision that runs counter to the evidence before it is

arbitrary and capricious); *Islander E. Pipeline Co. v. State of Connecticut*, 467 F.3d 295, 313 (2d Cir. 2006) (observing that an agency's failure to mention contrary scientific studies renders its conclusions arbitrary and capricious). Indeed, a decision which is inconsistent with the clear evidence in the record is incomprehensible and entitled to no deference by a reviewing court even under the arbitrary and capricious standard. *Haselwander v. McHugh,* 774 F. 3d 990, 994 (D.C. Cir. 2014).

### REQUIRING PETITIONER TO SHOW PRECISELY HOW MOLECULAR MIMICRY CAUSED HER DIABETES IMPROPERLY INCREASES THE PETITIONER'S BURDEN OF PROOF FROM MORE LIKELY THAN NOT TO NEAR ABSOLUTE CERTAINTY

Petitioner submitted numerous peer-reviewed articles and case notes establishing that Fulminant Type 1 diabetes is well recognized. While agreeing that the Special Master was probably wrong in holding that diabetes always takes years to develop, A42, the Court below found that moot because Dr. Shoenfeld did not identify what there was in Ms. Crutchfield's islet cells that was so similar to what parts of the MMR vaccine that the similarity would cause the confusion of the immune system known as molecular mimicry. The court held that as that theory without a precise explanation of method, could not explain this case, thus she need not deal with the Special Master's misstatements of medical fact. A 42.

Molecular mimicry is a preponderant theory of causation as it has been generally accepted as explaining the development of certain autoimmune diseases

11

resulting from vaccinations, *Blackburn v. Secretary of Health and Human Services*, Not Reported in Fed.Cl., 2015 WL 425935, (Fed.Cl., 2015), *Tompkins v. Sec'y of Health & Human Servs*., No. 10–261V, 2013 WL 3498652, at *22 (Fed. Cl. Spec. Mstr. June 21, 2013) ("[t]he molecular mimicry theory is the one most widely accepted for the agents most frequently accepted as causal"), motion for review den'd, *Tompkins v. United States*, 117 Fed. Cl. 713 (2014).

But the court below held that the petitioner here was required to show how molecular mimicry worked in her case. A42. Both petitioner's expert Dr. Shoenfeld and respondents' Dr. Maclaren agree that molecular mimicry causes diabetes and that no one knows precisely how. Thus, the court below requiring proof of mechanism which is not known by science. Dr. Maclaren's peer reviewed work states at A740: "(t)he interaction between a cell bearing and HLA molecule associated with an antigenic peptide and a T lymphocyte bearing a receptor capable of recognizing the HLA-peptide complex triggers the activation and proliferation of T lymphocytes. This process underlies nearly all immune responses." In another work he stated: "(a)lthough the possible factors that dictate induction of islet cell autoimmunity in a genetically susceptible person are unknown, viruses remain the leading candidates through mechanisms of molecular mimicry or through bystander activation." A700. His work sets forth the same process Dr. Shoenfeld explained at A85L 11-A86 L.11. Thus, the theory and its

process is well recognized, as is the fact that exactly how this works is unknown at this time. This Court has held:

> "…to require identification and proof of specific biological mechanisms would be inconsistent with the purpose and nature of the vaccine compensation program."

*Althen v. Secretary of HHS*, 418 F.3d 1274, 1280 (Fed.Cir.2005) (emphasis added), quoting *Knudsen v. Secretary of Dept. of Health and Human Services*, 35 F.3d 543, 549 (Fed. Cir 1994). Indeed, Knudsen, 35 F.3d at 551 (quoting House Report 99–908 at 3, 1986 U.S.Code Cong. & Admin. News at 6344) stated that the Program is "not to be seen as a vehicle for ascertaining precisely how and why vaccines sometimes destroy the health and lives of certain individuals while safely immunizing others." Id. at 549.

The petitioner's burden is only to present a plausible preponderant medical theory and to explain the connection to the case. *Althen supra*. Here the petitioner's autoimmune background, her age, the timing of the events and the fact that it is an autoimmune disease, and the literature showing an association with mumps in humans replicated by experiments in animals, fits the theory precisely. A158L2-A159L20; A241L3-8. That is the best that medical science can do at this time and to say that is not enough is to bar recovery generally. In most cases exactly how any disease or toxin actually causes an injury is unknown.

13

Therefore, molecular mimicry does explain onset in this case. Ms. Crutchfield's receipt of a second dose of each vaccine contained in the MMR vaccine caused an anamnestic response resulting in Fulminant Type 1 Diabetes. This explains the timing and the fact that the vaccine contains mumps antigen, and that Fulminant type 1 diabetes is associated with exposure to mumps is further proof that her diabetes is more likely than not due to the MMR vaccination.

## EPIDEMIOLOGICAL EVIDENCE

Dr. Shoenfeld testified that epidemiological studies are irrelevant where the condition in question is rare as is diabetes resulting from MMR. Rare events are not be picked up by any epidemiological study. A137 L 15-20. Further, MMR significantly lowers incidence of mumps, a disease well recognized to be associated with the onset of diabetes. Thus, the positive effects of the vaccine will hide any negative effects. A156 L 25-A157L5.

This flaw is well recognized. Epidemiological studies can support an inference of causation, they cannot refute a causal connection as epidemiological studies cannot prove a negative. *Harris v. Secretary of Health and Human Services,* 2014 WL 3159377 (Fed Cl. 2014).

It is submitted that where, as here, a plausible theory of causation has been established, where a logical connection has been established between that theory and the injury, to wit, the second exposure to the vaccine causing an anamnestic

reaction causing onset of Fulminant Type 1 diabetes, through an autoimmune process, most likely, molecular mimicry, a truly rare event, the revised conclusion of the IOM based upon the same epidemiological study which they previously deemed inconclusive, is irrelevant.

## CONCLUSION

The decision of the Special Master is contrary to the great weight of the evidence and indeed is in direct conflict with the evidence which establishes the consensus of medical science on the timing of onset, the plausibility of molecular mimicry and that an anamnestic reaction explains onset of fulminant disease.  The Court below while finding merit in petitioners petition on those points, deemed them moot by imposing a burden of proof this Court has deemed excessive.  The respondent's reliance on epidemiological studies is inadequate to disprove causation.  Therefore, the decisions below should be reversed and this case remanded for assessment of damages.

|  |  |
|---|---|
| Dated, New York, N.Y.<br>     March 10, 2015 | Respectfully submitted<br>/s/John F. McHugh<br>233 Broadway, Suite 2320<br>New York, N.Y. 10279<br>212-483-0875 |

# CERTIFICATE OF FILING AND SERVICE

I, Mariana Braylovskiy, hereby certify pursuant to Fed. R. App. P. 25(d) that, on March 11, 2015 the foregoing Reply Brief for Petitioner-Appellant was filed through the CM/ECF system and served electronically on the individual listed below:

MICHAEL PATRICK MILMOE,
  SENIOR LITIGATION COUNSEL
DEPARTMENT OF JUSTICE
TORTS BRANCH, CIVIL DIVISION
P.O. Box 146
Ben Franklin Station
Washington, DC 20044
(202) 616-4125

*Attorneys for Respondent-Appellee*

The required copies will be forwarded to the court upon approval.

/s/ Mariana Braylovskiy
Mariana Braylovskiy

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

　__x__　The brief contains <u>3336</u> words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

　_____　The brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

　__x__　The brief has been prepared in a proportionally spaced typeface using <u>MS Word 2002</u> in a 14 point, times new roman font or

　_____　The brief has been prepared in a monospaced typeface using <u>MS Word 2002</u> in a ___ characters per inch_____ font.

　　　　　　　　　　　　　　　/s/ John F. McHugh
　　　　　　　　　　　　　　　John F. McHugh